UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

GINGER MAY GONZALES, fka GINGER            Case No. DL 14-04778
MAY JASMAN, fka GINGER MAY COLE,           Chapter 13
                                           Hon. Scott W. Dales
                Debtor.
_____/

AMENDED MEMORANDUM OF DECISION AND ORDER[1]

PRESENT:     HONORABLE SCOTT W. DALES
             Chief United States Bankruptcy Judge

I.  INTRODUCTION

It is a common but regrettable fact of life in chapter 13 that many cases end in dismissal. Most times when this happens, the trustee is empty-handed, but sometimes she finds herself holding a debtor's plan payments when the court enters the dismissal order. When dismissal occurs before confirmation, the Bankruptcy Code clearly directs the trustee to return the funds to the debtor after deducting allowed administrative claims. But when the dismissal occurs after confirmation, the statute is less clear, clouded, perhaps, by omissions in the text and the usual competing priorities of the debtor and her creditors.

The question in the present case is whether a trustee who is holding post-confirmation plan payments at the time of dismissal must return them to the debtor, or instead remit them in accordance with the confirmed plan. Assuming the funds must go to the debtor, the question then becomes whether the court should, under the circumstances of this case, direct the trustee to remit them to the debtor's attorney. For the following reasons, the court concludes that a chapter 13

_____
[1] The court, on its own initiative, is correcting a typographical error on page 5.  *See* Fed. R. Civ. P. 60(a).

trustee in possession of post-confirmation plan payments when the dismissal order is entered must remit them to the debtor, unless a court order provides otherwise.

## II.  JURISDICTION

The United States District Court for the Western District of Michigan has jurisdiction over the chapter 13 bankruptcy case of  Ginger May Gonzalez (the "Debtor") pursuant to 28 U.S.C. § 1334(a), and has referred that case, and all related proceedings, to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. L.Civ.R. 83.2(a).  The contested matter arising from the Motion to Compel Trustee to Recoup Funds and Disburse to Debtor's Counsel (ECF No. 73, the "Motion") is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

Although the bankruptcy estate ceased to exist upon the dismissal of the case -- an event of substantive and jurisdictional significance -- the court believes its authority over the bankruptcy trustee provides an independent basis of jurisdiction to determine the disposition of the funds she is holding. *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579 (6th Cir. 1990) (28 U.S.C. § 959 provides basis for jurisdiction over bankruptcy trustee "independent" of 28 § 1334); *Ball v. United Cumberland Bank (In re Ball)*, 573 B.R. 708 (Bankr. E.D. Ky. 2017) (citing *Lomagno v. Salomon Brothers Realty Corp. (In re Lomagno)*, 320 B.R. 473 (1st Cir. BAP 2005) for proposition that bankruptcy estate ceases to exist at dismissal); *In re Hufford*, 460 B.R. 172, 175 n.2 (Bankr. N.D. Ohio 2011) (bankruptcy court has jurisdiction to determine rights to funds remaining with chapter 13 trustee despite dismissal).

Therefore, the court has authority to resolve the Motion and enter a final order. The parties have not suggested otherwise.

III.  ANALYSIS

A.      Factual and Procedural Background

On July 15, 2014, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.  After persuading the court to confirm her plan (ECF Nos. 18, 28, 39, 48 and 56, the "Plan") on October 3, 2014, and after making payments for nearly three years, the Debtor filed a motion to voluntarily dismiss her case (ECF No. 63) pursuant to 11 U.S.C. § 1307(b).[2] Because the Debtor had not previously converted her case, and because chapter 13 proceedings are supposed to be completely voluntary, the Debtor had an unfettered right to dismiss her case. Accordingly, the court granted her motion by entering an order on May 9, 2017 (ECF No. 64, the "Dismissal Order").

The Dismissal Order provided generally that "all provisions of 11 U.S.C. § 349 shall be effective," directed chapter 13 trustee Barbara P. Foley (the "Trustee") to prepare a final report, but made no specific provision regarding the disposition of any money in the Trustee's accounts at dismissal.

The parties agree that at the time of dismissal, the Trustee was holding $525.40 derived from the Debtor's post-petition wages (the "Funds").  The Funds arrived in the Trustee's lock box before entry of the Dismissal Order and posted to her account on May 9, 2017, the same day the court entered the Dismissal Order.  The parties also agree that on May 15, 2017 -- post-dismissal -- the Trustee made payments to the Debtor's creditors under the Plan, exhausting the Funds on hand.  There is no dispute that she made the payments in accordance with the Plan, but only that the Plan no longer applied at the time she paid the creditors.

---

[2] Unless otherwise indicated, statutory citations in the text of this opinion (as in "§ _____") shall refer to sections of Title 11, United States Code (the "Bankruptcy Code").

At about the same time, the Debtor's attorney filed an application for compensation (ECF No. 68, the "Fee Application") requesting approval of $2,419.23 in fees and expenses.[3]  He also filed the Motion seeking an order requiring the Trustee to recover the Funds that, he contends, she improperly disbursed, post-dismissal, to four creditors pursuant to the Plan.  He argues that, under 11 U.S.C. § 349(b)(3), the Debtor, rather than her creditors, is entitled to the Funds and, moreover, that there is "cause" under that same subsection to order the Trustee to send them to him, with the Debtor's permission, in partial satisfaction of the amounts approved under the Fee Application. The Trustee objected (ECF No. 77), contending that the Bankruptcy Code requires her to remit the Funds to creditors under the Plan, even though the case has been dismissed.  The court issued a briefing schedule and, after reviewing the parties' submissions, heard oral argument in Lansing, Michigan on November 30, 2017.

In their briefs, the parties agree that the Trustee has successfully recouped and is now holding the $525.40.  Therefore, to the extent the Motion seeks an order requiring the Trustee to recover the Funds, the Motion is moot.  Further, neither party requested an evidentiary hearing, presumably because they agree with the court that the dispute presents a legal, rather than factual, issue.

B.      Competing Statutory Arguments

Both parties rely on separate sections of the Bankruptcy Code in support of their respective positions but after careful examination of the text and the authorities, the court concludes that neither statute definitively answers the question.  The court must choose the better of two imperfect alternatives, or perhaps identify another source of direction. *See In re Bateson,* 551 B.R. 807, 810

---

[3] After the Trustee objected to the Fee Application, the parties filed a stipulation resolving the objection (ECF No. 72).  The court approved counsel's fees as reasonable and, to the extent of funds on hand, a cost of administration under § 330(a)(4).

(Bankr. E.D. Mich. 2016) (noting that neither § 349(b) nor § 1326(a)(2) determines what happens to funds on hand at dismissal).

For his part, Debtor's counsel relies on § 349(b) governing dismissal, a Bankruptcy Code section that applies irrespective of chapter. 11 U.S.C. § 103(a). That section provides, in relevant part, as follows:

> Unless the court, for cause, orders otherwise, a dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3). This section, which plainly prescribes the effect of dismissal, has considerable intuitive appeal but does not quite get the Debtor over the finish line, at least not without a judicial gloss. This is so because, as several courts have observed, post-petition wages such as those included within the Funds, were not in existence immediately before the commencement of the case, and therefore not "vested" in anyone at the point in time the statute regards as significant. The Funds came into existence after "the commencement of the case" through the Debtor's efforts.

For her part, the Trustee relies on § 1326(a) and (c). Under § 1326, a chapter 13 debtor must "commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount . . . proposed by the plan to the trustee." 11 U.S.C. § 1326(a)(1)(A). If a debtor complies with this requirement, a trustee will have funds on hand at the time of confirmation. With respect to those funds, § 1326(a)(2) provides as follows:

> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any *such payment* in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any *such payments* not previously paid and not yet due and owing to creditors pursuant to paragraph

(3) to the debtor, after deducting any unpaid claim allowed under
section 503(b).

11 U.S.C. § 1326(a)(2) (emphasis added).  The Trustee argues that this provision resolves the dispute, and that because the Plan was confirmed, she must distribute the Funds in accordance with the Plan, notwithstanding dismissal.  The trouble is, again as several courts have noted, the italicized language ("such payment") refers to preconfirmation payments "proposed" under the Plan.  In other words, § 1326(a)(2) addresses payments made "pending confirmation":  if the plan is not confirmed, a trustee must return the funds to the debtor (after making deductions for administrative expenses); if the plan is confirmed, the trustee follows the plan.  As for other payments, such as those received after the court has made its confirmation decision, this section is silent.  *See, e.g., In re Edwards*, 538 B.R. 536, 541 (Bankr. S.D. Ill. 2015) ("§ 1326(a)(2) provides no instructions as to what a trustee shall do with funds received post-confirmation and on hand at the time of dismissal"); *In re Hamilton*, 493 B.R. 31, 36-37 (Bankr. M.D. Tenn. 2013) (Lundin, J.); *Williams v. Marshall (In re Williams)*, 488 B.R. 380, 386 (Bankr. N.D. Ill. 2013).  For this reason, the court does not find persuasive the decision in *In re Parrish*, 275 B.R. 424, 425 (Bankr. D. D.C. 2002) or other cases relying on § 1326(a)(2).

Undeterred, and still looking to this same section, the Trustee points to § 1326(c).  This section, however, has been construed in our district as identifying who will be making the payments to creditors, creating a presumption that the trustee, as opposed to the debtor, will serve as disbursing agent.  *See In re Vela*, 526 B.R. 230, 235 (Bankr. W.D. Mich. 2015) (citing *In re Jutila*, 111 B.R. 621, 624 (W.D.Mich.1989)).  This section does not specifically address how funds should be distributed at dismissal.  *In re Carr*, Slip Op. No. 13-23818 (Bankr. E.D. Wisc. July 17, 2017) (citing cases for the proposition that § 1326(c) only identifies the disbursing agent, and does not prescribe how funds should be distributed at dismissal).  Accordingly, the court reads § 1326(c)

as addressing only the question of who will serve as disbursing agent making payments to creditors and others under a confirmed plan.[4]

So, as noted at the beginning of this portion of the opinion, the two Bankruptcy Code sections identified by the parties do not determine how to distribute post-confirmation funds in a trustee's hands at dismissal, leaving the court to look elsewhere for direction.  Some courts have turned to federal policy.

C.      Federal Policies

A significant, bankruptcy-specific, federal policy expresses the view that a chapter 13 case must be entirely voluntary: after deciding to cease paying creditors under the protection of chapter 13, a debtor (who has not previously converted the case) may dismiss "at any time."  11 U.S.C. § 1307(b). Much as the Supreme Court found in the case of conversion, when the case comes to an end, this policy requires restoration of the *status quo ante.  Harris*, 135 S. Ct. at 1835, 1837. This rationale underlies the decision in *Bateson*, among others.  As the Honorable Phillip J. Shefferly observed, Congressional intent in § 349(b) is "to basically unwind the entire case as if it never happened."  *Bateson*, 551 B.R. at 813 (citing *Harris*); *cf. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017) (dismissal of a bankruptcy case "aims to return to the prepetition financial *status quo*").  This policy counsels in favor of returning the funds to the Debtor, rather than the creditors claiming under a plan that, after dismissal, is no longer in effect or binding.  Sending the money back to the debtor squares with what Congress intended, as Judge Shefferly observed in *Bateson*, and as the Supreme Court itself indicated in *Harris* and *Jevic Holding Corp.  See also*

---

[4] Even if the court's construction of §1326 is too crabbed, the Supreme Court's decision in *Harris v. Viegelahn*, 135 S. Ct. 1839 (2015), makes reliance on the provisions of chapter 13 unprofitable after dismissal.  *See In re Bateson*, 551 B.R. at 812-13 (observing that the Supreme Court's reasoning that "no Chapter 13 provision holds sway" after conversion has even more force after dismissal).

H.R.Rep. No. 95–595, at 337-38 (1977); S.Rep. No. 95-989, at 48-49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5834-35, 6294.[5]

But, as the Sixth Circuit reminded us earlier this month, "[l]egislating is for Congress, not the courts," and "it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done . . . ." *Nestlé Waters North America, Inc. v. Mountain Glacier LLC (In re Mountain Glacier LLC)*, Slip Op. No. 17-5638 (6th Cir. Dec. 11, 2017) (citing *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)). Here, Congress might have concluded that post-confirmation payments should be returned to the Debtor, or it might have concluded that they should go to the creditors. Each party to this dispute has made strong arguments pointing in both directions, based on different federal statutes.

The decision in *Bateson* and the *dicta* in *Harris,* however, do not re-write the Bankruptcy Code based on mere predictions of Congressional intent, but instead give voice to a more general federal policy -- the principle of comity between the state and federal court systems. This is the same policy embodied in the Rules of Decision Act. 28 U.S.C. § 1652 (the "Act"). After a bankruptcy case is dismissed, and the bankruptcy estate ceases to exist, courts should limit the effects of the case and their previously exclusive *in rem* jurisdiction over property formerly within the estate, returning the parties to their prior positions as far as possible, governed by applicable non-bankruptcy law.

Since the founding of the Republic, the jurisdiction of federal courts has been limited, and the reach of federal legislative authority was designed to be similarly confined. More generally, federal authority exists only because, and to the extent, the States ceded it to the federal

---

[5] Anticipating controversies over the scope of the subsection, the legislative history acknowledges that "the court will make appropriate orders to protect rights acquired in reliance on the bankruptcy case." H.R.Rep. No. 95-595, at 337-38 (1977); S.Rep. No. 95-989, at 48-49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5834-35, 6294.

government under the Constitution.  The Rules of Decision Act puts this principle into effect, providing as follows:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

28 U.S.C. § 1652.  Although it is tempting to think of bankruptcy proceedings as quintessentially federal and therefore governed exclusively by federal law, a contested matter in bankruptcy court is a civil action in federal court, and therefore within the ambit of the Act.  In addition, federal trustees are bound to follow state law.  28 U.S.C. § 959(b).  So long as there is no controlling federal law, state law applies.

From the court's analysis of §§ 349(b)(3) and 1326, which limits the former to prepetition property and the latter to pre-confirmation payments, it would appear that the Bankruptcy Code does not answer the question confronting the court today, namely, as between the Debtor and her creditors, who is entitled the post-petition wages the Trustee holds at dismissal?  The court, therefore, looks to the laws of the forum state to see how that separate and presumptively applicable body of law would answer the question. *In re Wallace's Bookstores, Inc.*, 317 BR 709, 712-13 (Bankr. E.D. Ky. 2004) (when federal courts are called upon to resolve issues of state law in actions based on bankruptcy jurisdiction, they look to the law of the forum state).  This court, in other words, looks to Michigan's substantive law where, as here, the relevant contacts point to the forum state.

A frustrated escrow arrangement is a strikingly analogous situation.  In Michigan, when one person transfers property to another person for delivery to a third person upon the occurrence of specified conditions, an escrow arises.  The escrow agent -- here the Trustee by analogy -- acts as agent for the creditors but also for the Debtor, and the effectiveness of the transfer from the

Debtor to her creditors is postponed until the conditions of the escrow are satisfied. *See City Bank & Trust Co. v. Kwaske Bros. Const. Co.*, 69 Mich. App. 271, 244 N.W.2d 443 (1976) (describing operation of escrow); *Edward Rose Sales Co. v. Shafer*, 41 Mich. App. 105, 199 N.W.2d 655 (1972) (observing that money may be the subject of escrow); *cf. Harris*, 135 S. Ct. at 1839 ("estate property does not become property of creditors until it is distributed to them"). When the conditions precedent to the release of the escrowed property do not come to pass, the property is returned to the original transferor. *Noakes v. Noakes*, 290 Mich. 231, 287 N.W. 445 (1939).

Returning to the Debtor's case, when she made the post-confirmation payments to the Trustee, she did so voluntarily and on the condition that the Trustee would pay creditors under the Plan. Indeed, every chapter 13 case is conditioned upon the willingness of the Debtor to pay creditors because such proceedings, as a matter of statute (and some have suggested, constitutional law), must be completely voluntary. So, when the Debtor elected to dismiss her case and the Dismissal Order rendered the Plan a dead letter, the condition precedent to the Trustee's payment to creditors -- the effectiveness of the Plan -- failed as a matter of fact and law. In Michigan, when the condition of an escrow fails, the escrow agent must return the escrowed property to the transferor. *Id.*

Under the circumstances, the Trustee finds herself in the position akin to an escrow agent in receipt of payments made to her for distribution under a prior arrangement that no longer remains in effect. Much as a title company returns to the buyer a down payment on a sale that has fallen through, the Trustee must return the payment to its source, the Debtor. Accordingly, state law points to the same result that Judge Shefferly reached in *Bateson* and that the Supreme Court's *dicta* in *Harris* suggested. The Debtor, rather than her creditors, has the stronger claim to the Funds.

Next, the court must address the request by the Debtor's counsel, and the Debtor herself,[6] to order the Trustee to return the Funds to counsel, rather than the Debtor.  Although the court does not doubt that the Funds will eventually end up in counsel's hands, it is unwilling to order the Trustee to make the payment directly to counsel for several reasons.

First, for the reasons just given, § 349(b)(3) does not apply to the Funds:  they were not in existence at the time the case was commenced, let alone vested in anyone at that time.  Therefore, the statute upon which counsel relies does not provide grounds for the relief requested.

Second, although the court may exercise limited authority over the Trustee as she winds up the case, directing her to favor one creditor (Debtor's counsel) over another is inconsistent with treating the case as if it never happened.  The termination of the automatic stay upon dismissal shows that Congress intended that the race of creditors should resume in a forum other than the bankruptcy court.  *See* 11 U.S.C. § 362(c) (termination of automatic stay).  Giving counsel a judicially-approved head start based on a federal priority scheme that no longer applies (*i.e.*, §§ 330(a)(4), 503(b)(2) and 507(a)(2)) is inconsistent with the pronouncements of Congress and the Supreme Court that, after dismissal, we should proceed to the greatest possible extent as if the case had not been commenced.  This is a matter of comity.

Similarly, directing the Trustee to pay counsel, rather than the Debtor, would impress upon the transfer an approving federal gloss after the federal court's role in the collection process has come to an end.  This goes beyond winding-up this case by potentially affecting the next.  Certainly, nothing in the court's decision today precludes the Debtor from paying her counsel in accordance with applicable non-bankruptcy law after the Trustee returns the Funds to her.  The

---

[6] In a document entitled "Informed Consent," the Debtor asks that the Funds be returned to her counsel.  *See* Debtor's Brief in Support of Motion to Compel Trustee to Disburse Recouped Funds to Debtor's Counsel (ECF No. 84) at Exh. 2.

court is merely stating that it will not approve her decision to prefer that creditor -- one who presently has a close relationship with her -- over other creditors who do not enjoy the inside track.

## IV. CONCLUSION AND ORDER

Whether the court relies on the policy of restoring the *status quo ante* that many have seen in the shadows of § 349, or state law principles in the absence of controlling federal statute, or some combination of both, the outcome is the same: the Trustee must return the Funds to the Debtor, and not to the creditors under the Plan.

The court acknowledges that the text of §§ 349 and 1326, and the implications and broad language of the *Harris* decision have produced considerable uncertainty within our District in the last few months regarding end-of-case issues in chapter 13 cases. Whether the uncertainty arises, as here, because of the fortuity that the Trustee had not distributed the Funds before the entry of the Dismissal Order, or in other cases because debtor's counsel has not applied for, or been fully paid, before dismissal, the court believes that with careful drafting and more attention to the timing of events in the case we can all bring much needed clarity and direction. Whether a dismissal is voluntary or involuntary, it should never take debtor's counsel by surprise.

For example, because a chapter 13 debtor generally controls the timing of her own dismissal motion, counsel might include within the motion a proposal for addressing unpaid fees or the disposition of funds on hand, or the termination of wage orders or other payment mechanisms. Similarly, in response to a dismissal motion by the trustee or a creditor, counsel could ask the court to consider these issues before the jurisdictionally and substantively significant event of dismissal. This would give the court an opportunity to provide much-needed direction, where appropriate, in the dismissal order itself, regarding the disposition of funds on hand or other winding-up issues. The court and the parties should not be in the position of having to make

important end-of-case decisions more than seven months after dismissal, as in this case, long after the bankruptcy estate has ceased to exist and the stay has terminated.  Post-dismissal limbo invites unnecessary conflicts[7] by extending the effects of the bankruptcy proceeding beyond the limits Congress intended.

Trustees, too, should pay close attention to recurring end-of-case issues and raise concerns with the court prior to dismissal.  For example, they are in the best position to know whether post-confirmation plan payments remain on deposit in their accounts and to request pre-dismissal direction if necessary.

For the court's part, a few modest changes to routine orders and practices might also reduce uncertainty.  For example, the court will consider including within its confirmation text orders additional language directing the trustee to return to the debtor any post-confirmation funds on hand at dismissal, unless the court orders otherwise.[8]  This simple provision might also be useful in the dismissal order, to bring much-needed clarity going forward.  Similarly, the court's dismissal order ought to briefly postpone the revesting of prepetition estate property under § 349(b)(3) in order to give interested parties an opportunity to ask the court to order otherwise, "for cause."  11 U.S.C. § 349(b)(3).  In a similar vein, a brief delay in granting a debtor's dismissal motion might give interested parties an opportunity to raise other important end-of-case concerns.  *See, e.g.*, 11 U.S.C. § 349(a) (regarding effect of dismissal on debtor's eligibility for discharge in a future case).

---

[7] Cases involving post-dismissal collection activity directed at bankruptcy trustees, though perhaps mitigated by the *Barton* doctrine to the extent it applies, illustrate the point.  *See, e.g., In re Elrod,* 523 B.R. 790 (Bankr. W.D. Tenn. 2015) (IRS notice of levy served on chapter 13 trustee post-dismissal); *see generally Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.3d 1236, 1240-41 (6th Cir. 1993) (discussing *Barton* doctrine in bankruptcy setting).

[8] The confirmation order is more durable than the Plan or the provisions of chapter 13.  *See Harris*, 135 S. Ct. at 1838-39 (noting that no provision of chapter 13 "holds sway" after conversion, but relying on confirmation order to support its conclusions regarding property included within the chapter 7 estate).

Any such delay, of course, must balance the orderly winding-up of the case with the strictly voluntary nature of chapter 13 proceedings.

Any change in practice or understanding, such as the recent changes in the wake of *Harris*, will require the court and the bar to work together, thoughtfully and patiently, for the sake of the public in general. In this particular case, after weighing the thoughtful arguments of counsel, the court has determined to grant the Motion in part, and deny it in part. As between the Debtor and her creditors, the Debtor has the better claim to the Funds; as between the Debtor and her counsel, the Trustee shall remit the Funds to the Debtor.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows: (1) the Motion is GRANTED in part and DENIED in part; and (2) the Trustee shall promptly remit the Funds to the Debtor.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Ginger M. Gonzales, Michael T. Brown, Esq., Courtney K. Roberts, Esq., Barbara P. Foley, Esq., and the United States Trustee (by First Class U.S. Mail).

[END OF ORDER]

**IT IS SO ORDERED.**

**Dated December 21, 2017**



Scott W. Dales
United States Bankruptcy Judge